UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOHN HEILMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>TODD WASKO,<br><br>    Defendant. | No.  2:12-cv-01966 AC P<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff, a state prisoner, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds with a single claim that defendant Todd Wasko violated his rights under the First Amendment.  Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) asserting that plaintiff has failed to exhaust available administrative remedies.  ECF No. 23.  Plaintiff opposes the motion (ECF No. 24, 26) and defendant has replied.  ECF Nos. 25, 29.

***Allegations of the Complaint***

At all times relevant, plaintiff was housed at California Medical Facility (CMF), where defendant was employed as a correctional officer.  During portions of the relevant timeframe, defendant was the correctional counselor to whom plaintiff was assigned.

On or about August 29, 2008, plaintiff went to defendant's office for an "Olson Review,"[1]

---
[1] See In re Olson, 37 Cal. App. 3d 783 (1974) (recognizing inmates' right under state law to review their own central and medical files).

1

to review the contents of his prison Central File.  ECF No. 1 at 12.  On or about September 5, 2008, plaintiff submitted an inmate appeal, log number CMF 08-03113, complaining that defendant had denied him adequate time to complete his Olson Review and forced him to sign a document stating to the contrary.  Id.  Plaintiff's appeal was partially granted.  Id. at 13.

Subsequently, defendant began to retaliate against plaintiff for his filing of the appeal. Defendant took the following adverse actions:

1. On December 10, 2009, defendant authored a CDC 128-B Chrono titled "Conduct Which Could Lead to Violence," stating that plaintiff had been verbally abusive and hostile towards staff members who were present at his inmate classification hearing, or "Annual Review."  See ECF No. 1 at 46.

2. On July 20, 2011, defendant authored a CDC 128-B Chrono titled "Disruptive Behavior," stating that plaintiff had exhibited aggressive behavior when defendant was attempting to facilitate a CourtCall for plaintiff.  See ECF No. 1 at Ex. 58.

3. On or before September 12, 2011, defendant authored a 128-B Chrono titled "Staff Safety Concerns" after contact with plaintiff during another CourtCall.  Defendant wrote that plaintiff continuously refuses to follow verbal orders and to cease disruptive behavior, and defendant does not feel safe around plaintiff.  Defendant requested that plaintiff be moved away from defendant's immediate work area.  See ECF No. 1 at 74.

4. On October 28, 2011, defendant issued plaintiff a Rules Violation Report ("RVR") for "threatening staff," stating that plaintiff advanced on defendant at an accelerated pace causing defendant to put himself into a defensive position.  Plaintiff then moved around defendant while looking directly in defendant's eyes and laughing and shaking his head.  Defendant thought that plaintiff was laughing at the fact that he had scared defendant.  On November 17, 2011, a hearing was held regarding the RVR.  The hearing officer found plaintiff guilty of a lesser offense and downgraded the RVR to a CDC 128-A Chrono.  See ECF No. 1 at 63−69.

Plaintiff alleges that defendant "secretly" placed each of the three 128-B Chronos described into his Central File, thus depriving him of notice and an opportunity to challenge their

2

validity. Id. at 13−14, 17, 18.  Plaintiff discovered each of the three 128-B Chronos on October 21, 2011, during an Olson Review of his Central File.  Id. at 19.

### *Applicable Standards for Exhaustion of Administrative Remedies*

Pursuant to the Prison Litigation Reform Act ("PLRA"):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a); see also Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009); Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005) (quoting Porter v. Nussle, 534 U.S. 516, 525 n.4 (2002) (The PLRA "creates 'a general rule of exhaustion' for prisoner civil rights cases.").

Compliance with the exhaustion requirement is mandatory for any type of relief sought. Booth v. Churner, 532 U.S. 731, 739, 741 (2001) (holding that prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); accord Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); see also Panaro v. City of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a Congressional judgment that the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available administrative grievance procedure.").

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.  In California, inmates must "describe the problem and the action requested."  See McCollum v. CDCR, 647 F.3d 870, 876 (2011).  Further,

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact

| | |
|---|---|
| 1 | necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem |
| 2 | and facilitate its resolution, not to lay groundwork for litigation. |

Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also McCollum, 647 F.3d at 876 ("While an inmate need not articulate a precise legal theory, a grievance must alert the prison to the nature of the wrong for which redress is sought."). All steps must be completed before a civil rights action is filed. McKinney, 311 F.3d at 1200.

The PLRA's exhaustion requirement is not jurisdictional; rather, it creates an affirmative defense that a defendant may raise in an unenumerated Rule 12(b) motion. See Jones, 549 U.S. at 213–14; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. When a prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120.

In deciding a motion to dismiss for failure to exhaust, a court may "look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119–20. Thus, the parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a record. Id. at 1120 n.14. Plaintiff was provided with such notice on December 28, 2012 and again contemporaneously with the filing of the motion to dismiss on March 28, 2013. ECF Nos. 18, 23-1. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

### *Analysis of the Motion to Dismiss*

The State of California's prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See 15 Cal. Code Regs. §§ 3084−3085. Administrative procedures are generally considered exhausted once a prisoner has received a third level review, or "Director's Level Decision," with respect to the issues or claims presented. 15 Cal. Code Regs. § 3084.5.

The staff conduct of which plaintiff complains began on December 10, 2009 and plaintiff filed this action on July 26, 2012. Accordingly, any inmate appeal filed regarding the conduct at issue in this action should have been timely filed on or after December 10, 2009 and plaintiff

4

should have received a Director's Level decision by July 26, 2012, unless prison officials prevented him from exhausting. An appeal alleging that a staff member was retaliating against an inmate, if accepted, would be labeled a "staff complaint." ECF No. 23-3 at ¶ 5.

During the time period from December 10, 2009 to July 26, 2012, plaintiff submitted a total of 23 appeals that were accepted for review. ECF No. 23-4 at ¶ 5. Eighteen of those inmate appeals were accepted for review at the third level of review. ECF No. 23-3 at ¶ 4. Of the eighteen appeals accepted at the third level, the following three were labeled "Staff Complaint": (1) CMF-10-01299; (2) CMF-11-01283; (3) CMF-11-01341. Id. at ¶ 5. The court has reviewed CMF-10-01299 and CMF-11-01283, and they are unrelated to plaintiff's First Amendment claim against defendant. See Id. at Ex. A, B. The third Staff Complaint, CMF-11-01341, is related to plaintiff's allegations in this action. Plaintiff additionally contends that he exhausted administrative remedies by filing inmate appeal CMF-12-00106. ECF No. 1 at ¶ 50.

CMF-11-01341: The Allegedly Retaliatory RVR

In inmate appeal log number CMF 11-01341, dated November 7, 2011 and received November 9, 2011, plaintiff alleged that when plaintiff encountered defendant on October 28, 2011, defendant made an "implied threat" to transfer him for "personal reasons." See ECF No. 23-3 at 21−23. Plaintiff alleged that defendant had placed a false 128-B chrono in his Central File for "disruptive behavior." Id. Plaintiff alleged that defendant had attempted a "retaliatory transfer" of plaintiff; but when that didn't work, defendant had plaintiff moved out of his cell on September 30, 2011 in an act of retaliation. Id. Finally, plaintiff alleged defendant "has made false allegations against me for: 'stalking, threatening him verbally and making inappropriate comments in an aggressive manner,' during a brief 3-second encounter we had on the second floor hallway. Id. CMF-11-01341 was partially accepted at the second level of review; however, portions of the appeal were screened out. On November 30, 2011, plaintiff was advised in writing as follows:

> This is to advise you that your staff complaint concerning CCI Wasko has been accepted for review at the Second Level (CMF # 11-1341). The inquiry will focus on the allegation of 10-28-11. You have exceeded the regulatory time constraints to file a complaint regarding the cell move of 9-29-11. You have also

5

> exceeded time constraints to challenge the placement of the CDCR 128-B into your central file. This does not preclude you from filing an appeal on these issues, rather is [ ] to advise you that they will most likely be rejected based on time. You have listed several supporting documents on the 602 form, however, your appeal did not contain these [supporting] documents when received in the Appeals Office. Monetary or punitive compensation is out of the scope of the appeals process and will not be granted as requested. You may appeal your transfer from CMF once you have received your 128-G CSR chrono endorsing you to another institution. You may appeal the outcome of your RVR once [you] have received the final adjudicated copy. The due date for your staff complaint appeal is 12-27-11.

ECF No. 23-4 at 11. Plaintiff then submitted his staff complaint appeal in CMF-11-01341 to the third level of review, where it was denied. ECF No. 23-4 at ¶ 5.

Defendant argues that, because of the screen-out, plaintiff's filing of CMF-11-01341 did not address or exhaust any portion of plaintiff's retaliation claim. ECF No. 23-2 at 6. However, part of plaintiff's claim is that defendant falsely issued plaintiff the October 28, 2011 disciplinary report in an act of retaliation. That portion of CMF-11-01341 was not screened out. ECF No. 23-4 at 11 ("The inquiry will focus on the allegation of 10-28-11."). Plaintiff's appeal adequately described defendant's alleged retaliatory act of making false allegations in the October 28, 2011 RVR and was designated a "Staff Complaint." ECF No. 23-3 at 23. Plaintiff additionally attached a copy of the October 28, 2011 disciplinary report to his filing of CMF-11-01341. Id. at 27. Plaintiff's allegations and supporting documentation made sufficiently clear that he was appealing defendant's alleged retaliatory conduct of issuing the October 28, 2011 disciplinary report.

Plaintiff was advised that he could appeal the outcome of his RVR when he received the final adjudicated copy. Id. This was in accordance with CDCR regulations, which provide, as to "Disciplinary Appeals," that "[a] disciplinary action cannot be appealed until the hearing process is completed…." 15 Cal. Code Regs. § 3084.9 (2011). However, under the circumstances of this case, plaintiff was not required to file another inmate appeal as to the final result of the RVR in order to exhaust his claim that defendant retaliated by making false allegations in the October 28, 2011 RVR.[2] Plaintiff's First Amendment claim does not attack the outcome of the RVR itself,

---

[2] This is not to say that an inmate could not exhaust a First Amendment retaliation claim premised

6

but rather, challenges defendant's alleged retaliatory conduct of issuing the RVR in the first place. Appeal CMF-11-01341 sufficiently alerted the prison to the nature of the wrong for which redress was sought by "describ[ing] the problem and the action requested." See McCollum, 647 F.3d at 876. Plaintiff properly exhausted available administrative remedies as to the portion of his First Amendment claim alleging that defendant issued the October 28, 2011 RVR in retaliation for plaintiff's filing of inmate appeal CMF 08-03113.

CMF-12-M-00106: The Allegedly Retaliatory Chronos

In CMF-12-M-00106, plaintiff alleged that he discovered during an Olson Review on October 21, 2011 that defendant had placed three false CDC 128-B chronos in his Central File. ECF No. 23-3 at Ex. D. On July 23, 2012, CMF-12-00106 was canceled for not comporting with procedural requirements. Id. at Ex. E. Appeals Examiner K. Pool, Captain, explained the cancellation as follows:

> The examiner notes that the appellant is attempting to circumvent the appeal process. The appellant claims he participated in an Olson Review on October 21, 2011, at which time he discovered three CDC 128-B, General Chronos that were retaliatory in nature and which he wants removed from his Central File. The appellant submitted his appeal with the hand-written date of December 12, 2011, which is approximately three weeks after the 30 day appeal filing period expired. The appellant failed to adhere to time constraint requirements pursuant to CCR 3084.6(c)(4). The institution inappropriately accepted this appeal for processing based on the time constraint violation.
>
> This appeal is being canceled in accordance with California Code of Regulations, Section 3084.6, Rejection, Cancellation, and Withdrawal Criteria. Pursuant to CCF 3084.6(a)(5) states, "Erroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal." The appellant has exceeded time constraints although he had the opportunity to file within the prescribed time limit.

Id.

As set forth, plaintiff discovered the three chronos on October 22, 2011; he had thirty days thereafter in which to challenge them in an inmate appeal. Id.; see also 15 Cal. Code Regs. §

---

on the issuance of an alleged retaliatory disciplinary report by filing a "Disciplinary Appeal" after the conclusion of the hearing process.

3084.8(b) (July 2011 rev.). Plaintiff did not submit CMF-12-00106 until December 12, 2011. Therefore, defendant argues, the appeal was properly cancelled as untimely and did not exhaust any portion of plaintiff's claim. ECF No. 23-2 at 6−7; ECF No. 25 at 3.

Plaintiff contends that this appeal was improperly cancelled, and that it therefore exhausted (or excused exhaustion of) available administrative remedies as to the allegations it presented. ECF No. 26 at 7. First, plaintiff argues that his late filing of CMF-12-00106 must be excused because he was required to make a request to amend his Central File pursuant to 15 Cal. Code Regs. § 3450 before he could file an inmate appeal regarding the 128-B chronos. Id. at 11.

Pursuant to § 3450, any person on whom CDCR maintains a record or file containing personal information has the right to inspect their record. 15 Cal. Code Regs. § 3450. At the relevant time, the regulation further provided, in relevant part:

> (a)(2) Requests to amend a record or file shall be submitted in writing, including documentary evidence to support the proposed amendment…. [¶] (b) The denial of a request to amend information may be appealed in writing first to the institution head or headquarters' division head and then to the director, and shall include all documentation pertaining to the requested amendment. Inmates and parolees may appeal the denial of a request using the inmate/parolee appeal process established in these regulations.

15 Cal. Code Regs. § 3450 (2011). Plaintiff submitted a written request for correction of his file, citing this regulation, on November 20, 2011, the 30th day after his Olson review. ECF No. 26 at 44-48. On December 30, 2011, having received no response, he submitted a second written request. Id. at 50-57. Plaintiff was advised by letter dated January 26, 2012, that he must use the inmate appeals process to resolve this issue. Id. at 49. By that time plaintiff had already filed CMF-12-00106.

Contrary to plaintiff's assertion, § 3450 did not require him to request amendment of his Central File before he could file a "Staff Conduct" inmate appeal regarding defendant's alleged retaliation. § 3450 is part of Article 6 of CDCR's adult prison rules and regulations, which governs "information practices." By its terms, § 3450 applies to the correction of "outdated, inaccurate or incomplete information" in the files of "any person on whom the department maintains a record or file." § 3450(a). Assuming that this regulation extends to inmate attempts

to have unfounded chronos removed from their central files,[3] it provides a mechanism for addressing the state of the file but not for addressing staff misconduct or for substantively challenging disciplinary write-ups. The latter issues come within the exclusive scope of Article 8 of the adult prison rules and regulations, which governs the inmate appeal process. The information practices regulation does provide that inmates who utilize the file correction mechanism must use the inmate appeals process (as opposed to the process established in § 3450 itself for non-inmates) to appeal the denial of a request for correction. § 3450(b). The regulation is silent, however, as to the interplay of the inmate appeals process and the correction request process in the first instance, where an inmate seeks to challenge the inclusion of documents in his file on grounds that the documents themselves were products of staff misconduct.

      The regulations specific to inmate grievances expressly required that petitioner challenge any departmental decisions, actions, conditions or policies having an adverse effect on him via CDC Form 602 inmate appeal. See 15 Cal. Code Regs. §§ 3084.1(a), 3084.2(a), 3084.9 (2011). Section § 3084.1 provides that "[a]ll [inmate] appeals shall be processed according to the provision of Article 8, Appeals, unless exempted from its provisions pursuant to court order or superseded by law or other regulations." Nothing in the information practices regulation, § 3450, purports to supersede or provide an exception to § 3084.1. Accordingly, the mandatory language of § 3084.1 required plaintiff to follow the rules applicable to inmate appeals regarding his retaliation complaints, regardless of any other administrative process that may have been available for ministerial correction of the file. Accordingly, plaintiff's reliance on § 3450 does not excuse the untimely filing of CMF-12-00106 or support an exception to the administrative exhaustion requirement.

      Plaintiff next contends that in order to properly file an appeal referencing the 128-B chronos, he had to attach copies of the relevant documentation; however, his requests for copies

---

[3] Defendant maintains that the regulation is "inapplicable," but do provide any authority for the proposition that § 3450 may not be utilized by inmates seeking removal of allegedly inaccurate documents from central files. Section 3450 plainly contemplates use by inmates and parolees for some purposes, as it specifies that they must utilize the inmate or parolee appeals system to obtain review of a denial of file correction. See § 3450(b).

of the three 128-B chronos were ignored by Associate Warden Duffy and Warden Singh.  Id.
Plaintiff has attached a copy of an Inmate Request (form CDCR 22 10/09), dated November 18, 2011, in which he states that documents he previously requested from his Central File were not received and that he again requests copies of the three 128-B chronos at issue.  ECF No. 25 at Ex. C.  The form reflects that it was returned to plaintiff on December 2, 2011 along with the copies he requested.  Plaintiff then filed appeal CMF-12-00106 on December 12, 2011, with the relevant 128-B chronos attached.

In response to this argument, defendant references 15 Cal. Code Regs. § 3084.3(b) (July 2011 rev.), which provided:

> The inmate or parolee shall not delay submitting an appeal within time limits established in section 3084.8 if unable to obtain supporting documents, but shall submit the appeal with all available supporting documents and in Part B of their CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, provide an explanation why any remaining supporting documents are not available.  *Time limits for filing an appeal are not stayed* by failure to obtain supporting documentation and commence as set forth in subsection 3084.8(b).

15 Cal. Code Regs. § 3084.3(b) (July 2011 rev.) (emphasis added).  Accordingly, plaintiff's inability to obtain supporting documents does not excuse his untimely filing of CMF-12-00106.

To any extent plaintiff asserts that his untimely filing of CMF-12-0106 should be excused because defendant "secretly" placed the 128-B Chronos in his file, thus depriving him of notice and an opportunity to challenge them (ECF No. 26 at 5-13), his argument is rejected because the thirty day time limit for filing an inmate appeal was calculated from the date of his discovery of the 128-B Chronos.  See ECF No. 23-3 at Ex. E.

***Conclusion***

For the reasons discussed, defendant has met his burden of demonstrating that plaintiff failed to properly exhaust administrative remedies with respect to defendant's issuance of the three 128-B Chronos.  Defendant has failed to meet his burden with respect to the October 28, 2011 RVR.  Accordingly, the motion to dismiss should be granted in part and denied in part.

Defendant has not consented to jurisdiction by United States Magistrate Judge.

Accordingly, IT IS HEREBY ORDERED THAT the clerk shall assign this case to a

district judge.

Further, IT IS HEREBY RECOMMENDED that defendant's motion to dismiss (ECF No. 23) be granted in part, dismissing the portion of plaintiff's claim alleging that defendant issued three retaliatory 128-B Chronos, and denied in part as to the portion of the claim alleging that defendant issued a retaliatory RVR dated October 28, 2011.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 12, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:ls//heil.1966.57

11